**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRANCISCO JAVIER VEGA-ANGUIANO, | No. 15-72999 |
| *Petitioner*, | Agency No. A075-268-076 |
| v. | |
| WILLIAM P. BARR, Attorney General, | OPINION |
| *Respondent.* | |

On Petition for Review of an Order of
Immigration and Customs Enforcement

Argued and Submitted April 8, 2019
Seattle, Washington

Filed November 19, 2019

Before: William A. Fletcher, Consuelo M. Callahan,
and Morgan Christen, Circuit Judges.

Opinion by Judge W. Fletcher;
Concurrence by Judge Christen;
Dissent by Judge Callahan

## SUMMARY[*]

### Immigration

Granting Francisco Vega-Anguiano's petition for review of an order of Immigration and Customs Enforcement ("ICE") reinstating his prior order of removal, the panel held that: 1) because Vega-Anguiano timely challenged his reinstatement order, the court had jurisdiction to review that order, including the collateral attack on his underlying removal order; 2) Vega-Anguiano established a miscarriage of justice in his underlying proceedings because the order lacked a valid legal basis when it was executed; and 3) there is no diligence requirement that limits the time during which a collateral attack on a prior order may be made, in reinstatement proceedings, based on a showing of a gross miscarriage of justice.

In 1998, an Immigration Judge ordered Vega-Anguiano removed based on a conviction for possession of a controlled substance, but the government took no steps to remove him. In 1999, his conviction was expunged under California Penal Code § 1203.4, a rehabilitative statute. As the panel explained, for convictions occurring prior to July 14, 2011, the government may not remove an alien on the basis of a simple drug possession conviction, if the conviction has been expunged under a state rehabilitative statute and the alien satisfies the requirements of the Federal First Offender Act ("FFOA"). The panel noted that the government conceded at

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

oral argument that Vega-Anguiano met all the requirements of the FFOA when his conviction was expunged.

In 2008, Vega-Anguiano was removed to Mexico pursuant to the 1998 order, but illegally reentered the United States. In 2013, he moved to reopen his 1998 proceedings, but the BIA denied the motion as untimely, and this court denied his petition for review. In 2014, Vega-Anguiano was convicted of "misprison of a felony" related to cock-fighting, and ICE reinstated his prior order of removal. Vega-Anguiano filed a timely petition for review of the reinstatement order.

The panel explained that the court has jurisdiction to review a reinstatement order, and that some collateral attack is permitted on an underlying removal order, during review of a reinstatement order, if the petitioner can show that he suffered a gross miscarriage of justice in the initial deportation proceeding. However, the government argued that Vega-Anguiano's challenge to his 1998 order was untimely, and that therefore, the court lacked jurisdiction under 8 U.S.C. § 1252(b)(1), which requires a petition for review to be filed within thirty days of a final "order of removal." The panel rejected that argument, holding that it had jurisdiction to review Vega-Anguiano's reinstatement order, including his collateral attack on the 1998 order. The panel explained that "order of removal" in § 1252(b)(1) covers both removal and reinstatement orders such that, in cases where the petitioner seeks review of a reinstatement order, § 1252(b)(1) requires only that the *reinstatement* order be challenged within thirty days of becoming final. The panel noted that the Third, Fifth, and Tenth Circuits had come to a contrary conclusion.

Addressing Vega-Anguiano's collateral attack, the panel explained that prior orders of removal are not generally subject to collateral attack in reinstatement proceedings, but that the court retains jurisdiction to review an underlying removal order if the petitioner can show he suffered a gross miscarriage of justice in the underlying proceeding. The panel explained that the BIA has held that a gross miscarriage of justice occurs when a deportation or removal order had no legal basis at the time of its issuance *or* at the time of its execution. In *Matter of Farinas*, 12 I. & N. Dec. 467 (BIA 1967), the BIA found a gross miscarriage of justice where the decision ordering Farina's deportation could not have withstood judicial attack at the time it was executed. The panel noted that the BIA has continued to apply *Farinas*, that the Seventh and Third Circuits have followed it, and that this court's case law is consistent with *Farinas*.

The panel held that Vega-Anguiano had established a gross miscarriage of justice in his underlying proceeding, explaining that there was no valid legal basis for the removal order at the time it was executed in 2008 because the conviction on which the order had been based had been expunged and, as a result, he met the requirements of the FFOA.

The panel also concluded that the gross miscarriage of justice standard does not include a diligence component that bars a collateral challenge to a prior order when a reinstatement order is timely challenged on the ground that the prior order, on which the new order is based, in invalid. The panel explained that the controlling BIA decision was *Farinas*, where the BIA declined to fault Farinas either for his failure to appeal his original deportation order, or for the

sixteen-year gap between his deportation and his collateral challenge to that deportation in later proceedings.

Concurring, Judge Christen agreed that the court had jurisdiction, but wrote separately to emphasize the record in this case, which she concluded necessitated granting the petition. Judge Christen wrote that the government had taken the position that Vega-Anguiano did not submit his expungement order until 2014, but it was established, at oral argument, that counsel did not know what was in Vega-Anguiano's immigration file at the time of the reinstatement decision and that the file would have been incomplete without that order. Further, Judge Christen observed that Vega-Anguiano notified the BIA of the expungement at least by November of 2013, when he filed his motion to reopen. Judge Christen also noted that the immigration records were riddled with errors that signal the agency had incorrect information.

Dissenting, Judge Callahan wrote that the panel is bound by this court's decision in *Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (en banc), in which the court held that reinstatement of a prior removal order—regardless of the process afforded in the underlying order—does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies. It follows, wrote Judge Callahan, that Vega-Anguiano's petition for review from his reinstatement order does not allow the panel to consider challenges to his underlying order. Judge Callahan further observed that the majority of this court's sister circuits are in accord with that position.

Judge Callahan also wrote that the majority's' reliance on *Farinas* failed for two reasons. First, it was not true that

Vega-Anguiano's order could not have withstood judicial attack under the law at the time of his removal; rather, the expungement of his conviction under a rehabilitative statute did not mean his possession conviction was no longer a conviction under the immigration laws, and the "fact" that he might have been *eligible* for relief under the FFOA did not make his removal order legally invalid. Second, Judge Callahan concluded that Vega-Anguiano had not made a sufficient showing of injustice, noting that he was arrested and convicted for cocaine possession, his expungement was under a rehabilitative statute, and he was hardly prejudiced by the fact that he was not removed until 2008. Further, Judge Callahan noted that the government's failure to anticipate a request for FFOA relief did not make his 2008 removal a miscarriage of justice, and that there was no injustice in the reinstatement of his order after he illegally reentered the country and was convicted of a misprison of a felony.

---

## COUNSEL

Robert Pauw (argued), Gibbs Houston Pauw, Seattle, Washington, for Petitioner.

Todd J. Cochran (argued) and Robbin K. Blaya, Trial Attorneys; Daniel E. Goldman, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

On February 25, 2014, Immigration and Customs Enforcement ("ICE") reinstated Francisco Vega-Anguiano's prior order of removal. Vega-Anguiano filed a timely petition for review of the reinstatement order. Vega-Anguiano challenges the validity of the underlying removal order and argues that the reinstatement proceedings violated the Department of Homeland Security's regulations and his due process rights. We grant the petition.

## I. Jurisdiction

"We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a reinstatement order . . . and retain jurisdiction under § 1252(a)(2)(D) to consider 'constitutional claims or questions of law raised upon a petition for review.'" *Villa-Anguiano v. Holder*, 727 F.3d 873, 875 (9th Cir. 2013) (quoting *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1137–38 (9th Cir. 2008)) (first internal quotation omitted). The jurisdictional savings clause of § 1252(a)(2)(D) "permits some collateral attack on an underlying removal order during review of a reinstatement order if the petitioner can show that he has suffered a 'gross miscarriage of justice' in the initial deportation proceeding." *Garcia de Rincon*, 539 F.3d at 1138.

The government argues that we lack jurisdiction over Vega-Anguiano's collateral attack because his attempt to challenge his 1998 removal order is "untimely" under § 1252(b)(1), which requires that a petition for review ordinarily be filed within thirty days of the order becoming

final. 8 U.S.C. § 1252(b)(1). Whether Vega-Anguiano's petition is a timely challenge is an issue of first impression in this circuit. *See Villa-Anguiano*, 727 F.3d at 879 n.4 (acknowledging but declining to address the argument). The Third, Fifth, and Tenth Circuits have held that a federal court lacks jurisdiction to consider a collateral attack on a reinstated order if the petitioner failed to challenge the original order within thirty days of it becoming final. *Luna-Garcia de Garcia v. Barr*, 921 F.3d 559, 563–65 (5th Cir. 2019); *Verde-Rodriguez v. Attorney Gen. U.S.*, 734 F.3d 198, 203 (3d Cir. 2013); *Cordova-Soto v. Holder*, 659 F.3d 1029, 1031–32 (10th Cir. 2011). We disagree with this understanding of the relationship between the thirty-day limit of § 1252(b)(1) and the jurisdictional savings clause of § 1252(a)(2)(D).

We agree with the government that § 1252(b)(1) constrains § 1252(a)(2)(D). *See* § 1252(a)(2)(D) (explicitly exempting provisions in "this section," including § 1252(b)(1), from the scope of the savings clause). But we understand the nature of that constraint differently from our sister circuits. Section 1252(b)(1) provides, "The petition for review must be filed not later than thirty days after the date of the final order of removal." In *Castro-Cortez v. INS*, we interpreted a related jurisdictional provision in § 1252(a)(1), which authorizes review of "order[s] of removal." 239 F.3d 1037, 1044 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). We held that the phrase "order of removal" in § 1252(a)(1) covers both removal and reinstatement orders. *Id*. We now read "order of removal" in § 1252(b)(1) the same way. Accordingly, in cases in which the petitioner is seeking review of a reinstatement order, we read § 1252(b)(1) as requiring only that the *reinstatement* order be challenged within thirty days

of becoming final. Vega-Anguiano timely filed a petition for review of his reinstatement order. Thus, we have jurisdiction under § 1252(a)(1) and § 1252(a)(2)(D) to review Vega-Anguiano's reinstatement order, including his collateral attack on the underlying removal order.

## II. Factual Background

In 1988, when Vega-Anguiano was fourteen years old, he was arrested for "possession of a controlled substance, to-wit: Cocaine" in violation of California Health and Safety Code § 11350. The arrest did not result in a conviction, but Vega-Anguiano was required to attend drug classes. In 1991, Vega-Anguiano was stopped for driving without a license. When a record check revealed that he had not completed the drug classes, he was placed back into criminal proceedings on the 1988 possession charge. On September 19, 1991, Vega-Anguiano pleaded guilty to the by-then three-year-old possession charge. This was Vega-Anguiano's only conviction prior to his removal.

After his release from incarceration on the possession conviction, Vega-Anguiano married his girlfriend, who was a lawful permanent resident. He and his wife attempted to legalize his status. Vega-Anguiano's Application for Adjustment of Status was denied because of his 1991 conviction, and he was placed in removal proceedings. In December 1998, an Immigration Judge ordered Vega-Anguiano removed based on INA § 212(a)(2)(A)(i)(II) (conviction of a controlled substance violation). Vega-Anguiano's attorney failed to timely file an appeal to the Board of Immigration Appeals ("BIA"). The former Immigration and Naturalization Service ("INS") took no steps to remove Vega-Anguiano.

In September 1999, while he was still in this country, Vega-Anguiano's 1991 conviction was expunged under California Penal Code § 1203.4, a rehabilitative statute. For convictions occurring prior to July 14, 2011, the government may not remove an alien on the basis of a simple drug possession conviction, if the conviction has been expunged under a state rehabilitative statute and the alien has satisfied the requirements of the Federal First Offender Act. *See Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011); *Lujan-Armendariz v. INS*, 222 F.3d 728, 749–50 (9th Cir. 2000).[1] To qualify for this exception to removability, the alien must show that "(1) the conviction was his first offense; (2) he had not previously been accorded first offender treatment; (3) his conviction was for possession of drugs, or an equivalent or lesser charge such as possession of drug paraphernalia . . . and (4) he received relief under a state rehabilitative statute." *Ramirez-Altamirano v. Holder*, 563 F.3d 800, 812 (9th Cir. 2009) (internal quotation omitted). The government conceded at oral argument that Vega-Anguiano met all four criteria as soon as his conviction was expunged in 1999. His 1991 conviction was his first offense; he had not been previously accorded first offender treatment; his conviction was for simple possession; and he received relief under a rehabilitative statute. The expungement of Vega-Anguino's 1991 conviction thus removed the legal basis for his 1998 removal order. *Wiedersperg v. INS*, 896 F.2d 1179, 1182 (9th

---

[1] The dissent states that *Nunez-Reyes* "held that we would only apply [that] decision prospectively to protect those who relied on *Lujan-Armendariz*" and that "[i]t does not appear that Vega-Anguiano relied on *Lujan-Armendariz* . . . ." But *Nunez-Reyes* did not require a showing of reliance. To the contrary, it set out a bright-line rule: "For those aliens convicted before the publication date of this decision, *Lujan-Armendariz* applies. For those aliens convicted after the publication date of this decision, *Lujan-Armendariz* is overruled." *Nunez-Reyes*, 646 F.3d at 694.

Cir. 1990) ("[T]he nullification of a conviction upon which deportability is premised deprives deportation of a legal basis.").

ICE nonetheless arrested Vega-Anguiano in January 2008. His attorney failed to file a motion to reopen, and Vega-Anguiano was removed to Mexico in February 2008 pursuant to the no-longer-valid 1998 removal order. Several weeks later, he illegally reentered the United States.

In November 2013, Vega-Anguiano filed with the BIA a motion to reopen his 1998 proceeding. He explained in the motion that his 1991 conviction had been expunged. He argued for equitable tolling of the filing deadline based on his attorneys' ineffective assistance of counsel in 2008. The BIA denied as untimely the motion to reopen. Vega-Anguiano filed a petition for review of the BIA's denial in this court. We held that the BIA did not abuse its discretion in finding that Vega-Anguiano had failed to act with the diligence required for equitable tolling.

On January 28, 2014, Vega-Anguiano was convicted of "misprision of a felony," in violation of 18 U.S.C. § 4, and was sentenced to five-and-a-half months imprisonment. "Misprision of a felony" is committed when a defendant has full knowledge of the fact that the principal committed and completed a felony, but the defendant failed to notify the authorities and took an affirmative step to conceal the crime. *See United States v. Ciambrone*, 750 F.2d 1416, 1417 (9th Cir. 1984); *see also* 18 U.S.C. § 4. The felony at issue related to cock-fighting.

In February 2014, ICE notified Vega-Anguiano that it intended to reinstate his December 1998 removal order.

While in ICE custody, Vega-Anguiano "refused to answer any questions or sign any documents without the presence of an attorney." ICE reinstated the prior order of removal. Vega-Anguiano filed with this court a timely petition for review of the reinstatement order. In his petition, Vega-Anguiano collaterally attacks his original removal order. He also argues that ICE violated its own regulations and his due process rights during the reinstatement proceeding.

## III.  Discussion

There are strict limitations on collateral attacks on prior removal orders. Collateral attack is largely reserved for cases in which the removal order could not have withstood judicial scrutiny under the law in effect at the time of either its issuance *or* its execution. *See, e.g.*, *Matter of Farinas*, 12 I. & N. Dec. 467 (BIA 1967). There was no valid legal basis for Vega-Anguiano's removal order at the time of its execution in 2008 because the conviction on which it had been based had been expunged in 1999. This is therefore one of the rare cases where a collateral attack is appropriate.

The rule that prior removal orders are not generally subject to collateral attack is codified at 8 U.S.C. § 1231(a)(5): If "an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). However, under § 1252(a)(2)(D), we retain jurisdiction to review an underlying removal order "if the petitioner can show that he has suffered a 'gross miscarriage of justice' in the initial deportation proceeding." *Garcia de Rincon*, 539 F.3d at 1138. The BIA has consistently held that "an

alien may collaterally attack a final order of exclusion or deportation in a subsequent deportation proceeding only if she can show that the prior order resulted in a gross miscarriage of justice." *Matter of Roman*, 19 I. & N. Dec. 855, 856–57 (BIA 1988). *See also Matter of Malone*, 11 I. & N. Dec. 730, 731–32 (BIA 1966) (finding a gross miscarriage of justice where an alien's deportation order was clearly not in accord with the law as interpreted at the time of issuance); *Farinas*, 12 I. & N. at 471–72 (finding a gross miscarriage of justice where an alien's deportation order, which was valid when entered, became invalid by virtue of controlling circuit precedent issued prior to the execution of the order).

The BIA has held that a gross miscarriage of justice occurs when a deportation or removal order had no valid legal basis at the time of its issuance *or* at the time of its execution. The BIA held in *Farinas*, 12 I. & N. at 472, that "the decision in [Farinas's] case could not have withstood judicial attack under the law as it was then (and still is) interpreted. This being the case, a showing of gross miscarriage of justice has been made." Farinas was convicted in 1936 of burglary, a crime of moral turpitude, while a permanent resident. After completing his sentence, Farinas worked for a company that regularly sent him to Alaska to work in a cannery. In July 1942, the ship that was taking Farinas to Alaska stopped in Vancouver, Canada, and Farinas briefly went ashore. After arriving in Alaska, he was inspected and admitted into the United States. In 1944, Farinas was convicted of abducting a female under 18 years of age for sexual intercourse and was sentenced to five years in prison. In 1946, Farinas was ordered deported for being inadmissible (based on his burglary conviction) at the time of his entry into the United States in 1942 in Alaska. However, two cases decided shortly

thereafter made clear that Farinas was not deportable as charged because his arrival in Alaska was not properly deemed an "entry" under the immigration laws. *See DiPasquale v. Karnuth*, 158 F.2d 878 (2d Cir. Jan. 11, 1947); *Delgadillo v. Carmichael*, 332 U.S. 388 (Nov. 10, 1947). Nonetheless, Farinas was deported from the United States in 1950 when he finished serving his sentence.

Farinas illegally re-entered the United States in 1966, sixteen years later, and was placed in deportation proceedings that same year. In those proceedings, Farinas challenged the validity of his deportation in 1950. The BIA concluded that the original 1946 deportation order was invalid at the time it was executed in 1950. The BIA wrote that "from November 1947 until respondent's deportation in May 1950, the decision in respondent's case could not have withstood judicial attack under the law as it was then (and still is) interpreted." *Farinas*, 12 I. & N. at 472. Because Farinas's 1950 deportation lacked a valid legal basis at the time of his deportation, the BIA concluded that in 1966, sixteen years after the deportation, Farinas had made "a showing of gross miscarriage of justice" that permitted a collateral attack on the original deportation order. *Id*. That is, the BIA refused to give legal effect to the prior deportation order despite Farinas's failure to appeal that order at the time it was issued and despite the sixteen-year gap between Farinas's deportation and 1966. *Id*. at 469.

The BIA has continued to apply *Farinas* as good law: "Under our precedents, enforcement of a removal order would result in a gross miscarriage of justice only if the order clearly could not have withstood judicial scrutiny under the law in effect at the time of its issuance *or* initial execution." *In Re: Daniel Espino-Medina A.K.A. Daniel Espino*, 2016

WL 1722509, at *2 (BIA Apr. 5, 2016) (citing *Farinas*) (emphasis added); *see also In Re: Roman Miguel Duran-Alvarado A.K.A. Roman Alvarado*, 2014 WL 7691451, at *2 (BIA Dec. 17, 2014) (same); *In Re: Julio Alexander Guzman-Vasquez*, 2014 WL 1118477, at *1 (BIA Feb. 18, 2014) (same); *In Re: Tunbosun Olawale William*, 2008 WL 5537807, at *3 (BIA Dec. 23, 2008) (same).

Our sister circuits have followed *Farinas*'s approach. For example, the Seventh Circuit has observed that a gross miscarriage of justice has been found when "the individual should not have been deported based on the law as it existed at the time of the original deportation." *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 682 n.13 (7th Cir. 2003) (citing *Farinas*); *see also Debeato v. Attorney Gen. of U.S.*, 505 F.3d 231, 236 (3d Cir. 2007) (adopting *Robledo-Gonzales*'s approach to the gross miscarriage of justice standard).

Our circuit's case law is consistent with *Farinas*. In *Hernandez-Almanza v. INS*, 547 F.2d 100 (9th Cir. 1976), we cited *Farinas* for the proposition that "an exclusion order may not be attacked at a subsequent hearing unless there was a gross miscarriage of justice at the prior proceedings." *Id.* at 102. Hernandez-Almanza was ordered excluded in 1971 based on a prior conviction and was promptly returned to Mexico. He reentered the U.S. without inspection in 1972. In 1973, he was served with an Order to Show Cause for why he should not be deported. Pending the hearing on that order, he obtained an order from the state court vacating his 1971 guilty plea. Following the logic of *Farinas*, which allows a collateral attack when a predicate conviction was vacated before execution of the challenged deportation order, we held that Hernandez-Almanza could not collaterally attack the 1971 order because "he failed to institute proceedings to

vacate his conviction *prior to* his [1971 exclusion]."   *Id*. at 103 (emphasis added).

Vega-Anguiano, in contrast to Hernandez-Almanza, had his conviction expunged prior to—indeed, many years prior to—the execution of his removal order in 2008.  As we noted above, and as the government has conceded, the expungement eliminated the legal basis for his removal order because Vega-Anguiano met the requirements of the Federal First Offender Act.   Thus, by the time of Vega-Anguiano's removal in 2008, his removal order lacked a valid legal basis. Under *Farinas*, this is a "gross miscarriage of justice." 12 I. & N. at 472.

We have never addressed whether the gross miscarriage of justice standard includes a diligence component that bars a collateral challenge to a prior removal order when a reinstatement order is timely challenged on the ground that the prior removal order, on which the new order is based, is invalid.  The controlling BIA decision is *Farinas*.  The BIA declined to fault Farinas either for his failure to appeal his original deportation order, or for the sixteen-year gap between his initial invalid deportation and his collateral challenge to that deportation during his later deportation proceedings.

The BIA noted in *Farinas* that the initial deportation order was legally invalid at the time of his deportation.  It wrote, "This being the case, a showing of gross miscarriage of justice has been made."  12 I. & N. at 472.  *Farinas* is on all fours with Vega-Anguiano's case.   It established two propositions.  First, where an alien has been removed on the basis of a deportation or removal order that lacked a valid legal basis at the time of its issuance or execution, a gross

miscarriage of justice has occurred. Second, there is no diligence requirement that limits the time during which a collateral attack on that deportation or removal order may be made based on a showing of gross miscarriage of justice.

The equitable idea that diligence should not be demanded of individuals who were previously removed on an invalid legal basis, and who, as a result, are facing adverse legal consequences in new proceedings, is familiar. We have endorsed this idea in the context of illegal reentry prosecutions under 8 U.S.C. § 1326. Normally, an alien can challenge the validity of a prior removal order as a defense to illegal reentry only if he demonstrates that (1) he has exhausted any administrative remedies that may have been available to seek relief from the order; (2) the removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326. "But under our circuit's law, if Defendant was not convicted of an offense that made him removable under the INA to begin with, he is excused from proving the first two requirements." *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017).

Our dissenting colleague contends that *Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (en banc), requires a different result. We disagree.

The central question in *Morales-Izquierdo* was whether an immigration officer (as distinct from an Immigration Judge) could reinstate a removal order. We held that an immigration officer could do so. A further question was whether a removal order could be reinstated—by either an immigration officer or an Immigration Judge—if there had

been a due process violation during the underlying removal proceeding. Our case law at the time was that "[t]he INS cannot reinstate a prior order of removal that did not comport with due process." *Arreola-Arreola v. Ashcroft*, 383 F.3d 956, 963 (9th Cir. 2004).

In *Morales-Izquierdo*, we overruled our decision in *Arreola-Arreola*. We wrote, "Reinstatement of a prior removal order—regardless of the process afforded in the underlying order—does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies." *Morales-Izquierdo*, 486 F.3d at 497. Our dissenting colleague relies on this sentence, but it has no bearing on the case before us.

The question here is not whether Vega-Anguiano was afforded due process in the proceeding that led to the entry of his removal order. Whether or not he was afforded due process, he contends that the execution of his removal order— which was invalid at the time of its execution—constituted a "gross miscarriage of justice."

The governing law when we decided *Morales-Izquierdo* was not only, as in *Arreola-Arreola*, that a removal order "that did not comport with due process" could not be reinstated. It was also, as in *Farinas*, that a removal order whose execution constituted a "gross miscarriage of justice" could not be reinstated. In *Morales-Izquierdo*, we specifically addressed due process and overruled *Arreola-Arreola* by name. We said nothing about gross miscarriage of justice and never mentioned *Farinas*.

Conclusion

Vega-Anguiano timely challenged the order reinstating his prior removal order.  Based on *Farinas*, we conclude that Vega-Anguiano has shown a "gross miscarriage of justice." His 1998 removal order lacked a valid legal basis at the time of his removal in 2008.  Also based on *Farinas*, we further conclude that Vega-Anguiano's collateral attack on his removal order is timely.   We therefore hold that the reinstatement order was improper.  We do not reach Vega-Anguiano's due process and regulatory arguments.[2]

**Petition for Review GRANTED.**

---

CHRISTEN, Circuit Judge, concurring:

I agree that we have jurisdiction to hear Vega-Anguiano's petition for review.  I write separately to emphasize the record in this case, which I conclude necessitates our decision to grant the petition for review.

The government took the position prior to oral argument that Vega-Anguiano did not submit notice of his 1999 expungement order until July of 2014, five months *after* the Department of Homeland Security (the "agency") decided to reinstate the removal order.  However, at oral argument, it was established that counsel did not know what was in the A-

---

[2] Appellant's Motion to Supplement the Record on Appeal [Dkt. No. 21], filed November 16, 2017, is **GRANTED IN PART**, as to Vega-Aguiano's 1999 expungement order.  *See id.* at 38.

File[1] at the time the immigration officer made the February 2014 reinstatement decision. Counsel for the government agreed that the A-File would have been incomplete without the 1999 expungement order. After oral argument, we now know that Vega-Anguiano notified the BIA of his expungement at least by November of 2013, when he attached the 1999 order to his motion to reopen. Although it is not clear when Vega-Anguiano *first* submitted notice of the expungement order to the agency, the record shows that a California Superior Court entered the 1999 expungement order nearly two months before the agency issued the warrant for the order of removal, approximately nine years before the agency removed Vega-Anguiano to Mexico, and almost fifteen years before the agency issued the reinstatement order.

Whether or not the expungement order was filed with the agency prior to November of 2013, the immigration records are riddled with errors that signal the agency had incorrect information. For example, at least one immigration record incorrectly states that Vega-Anguiano was arrested and charged with possession for sale (not simple possession) of cocaine; at least one record shows that he was arrested twice (not once); and others show that he was convicted in 1999 (not 1991), which suggests a second conviction. These errors appear on internal immigration documents that were apparently prepared by agency staff, not on documents submitted by petitioner. We do not know whether they repeat other errors in the A-File. There is no indication of any misconduct—it appears that a few scrivener's errors were

---

[1] "The A-File documents the history of immigrants' and others' interactions with components of the Department of Homeland Security and predecessor agencies." *Dent v. Holder*, 627 F.3d 365, 372 (9th Cir. 2010).

repeated as the case progressed. But, without access to his A-File, Vega-Anguiano could not have known that he needed to bring these errors to the agency's attention. The government's concession that Vega-Anguiano would have qualified for FFOA relief at the time of his 1999 expungement order clears up these errors in the record, but it also underscores that an immigration officer checking the A-File prior to reinstatement of the removal order would have seen several false clues about the appropriateness of reinstatement.

The 1999 expungement order, which was entered prior to the issuance and execution of Vega-Anguiano's warrant of removal, eliminated the legal basis for Vega-Anguiano's removal. Given this sequence of events and status of the record, I concur in granting Vega-Anguiano's petition for review.

---

CALLAHAN, Circuit Judge, dissenting:

As a three-judge panel, we are bound by our precedent. In *Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (en banc), we rejected Morales' claim "that a removal order may not constitutionally be reinstated if the underlying removal proceeding itself violated due process." *Id.* at 497. We held that "[r]einstatement of a prior removal order—regardless of the process afforded in the underlying order—does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies." *Id.* Relying on the Supreme Court's opinion in *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 44 (2006), we noted that a petitioner has "no constitutional right to force the government

to re-adjudicate a final removal order by unlawfully reentering the country." *Id.* at 498.[1] It follows that Vega-Anguiano's petition for review that was filed within thirty days of the reinstatement—but almost two decades after his removal order—does not allow us to consider his challenges to the underlying 1998 removal order. This is consistent with the plain text of 8 U.S.C. § 1231(a)(5), which states: "[i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." Accordingly, to the extent that the petition for review challenges Vega-Anguiano's underlying removal order, it should be dismissed.

The majority of our sister circuits are in accord with our position in *Morales-Izquierdo*. *See, e.g.*, *Moreno-Martinez v.*

---

[1] Lest there be any doubt as to our holding we explained:

> If Morales has a legitimate basis for challenging his prior removal order, he will be able to pursue it after he leaves the country, just like every other alien in his position. If he has no such basis, nothing in the Due Process Clause gives him the right to manufacture for himself a new opportunity to raise such a challenge. The contrary conclusion would create a new and wholly unwarranted incentive for aliens who have previously been removed to reenter the country illegally in order to take advantage of this self-help remedy. It would also make a mockery of aliens who do respect our laws and wait patiently outside our borders seeking lawful admission. Nothing in the Constitution requires such a perverse result.

486 F.3d at 498.

*Barr*, 932 F.3d 461, 465 (6th Cir. July 31, 2019) ("[A]ny challenge (collateral or otherwise) filed 30 days after the removal order was filed is untimely and we have no jurisdictional basis to entertain the challenge."); *Luna-Garcia De Garcia v. Barr*, 921 F.3d 559, 565 (5th Cir. 2019) ("[I]f an alien illegally re-enters the United States and his prior removal order is reinstated," then to "preserve our jurisdiction under § 1252(a)(2)(D)'s savings provision, an alien must file a petition for review within 30 days of the removal order as required by § 1252(b)(1), in addition to exhausting all available administrative remedies and demonstrating that the initial proceedings constituted a gross miscarriage of justice."); *Verde-Rodriguez v. Attorney Gen. U.S.*, 734 F.3d 198, 203 (3d Cir. 2013) (finding a lack of jurisdiction over underlying removal order because "Verde's filing of his appeal within thirty days after reinstatement of his removal order does not render his petition timely"); *Cordova-Soto v. Holder*, 659 F.3d 1029, 1032 (10th Cir. 2011) (concluding that an alien petitioning for review of a reinstatement order cannot challenge the original order of removal, including constitutional claims or questions of law, because such a challenge was time-barred by the statutory 30-day limit); *Sharashidze v. Mukasey*, 542 F.3d 1177, 1178–79 (7th Cir. 2008) ("[Section] 1252(a)(2)(D), which authorizes this court to decide constitutional claims and questions of law, is explicitly constrained by the 30-day time limit in § 1252(b)(1).").

Notwithstanding the wealth of authority supporting our position in *Morales-Izquierdo*, the majority, relying on a 1967 decision by the Board of Immigration Appeals, *Matter of Farinas*, 12 I. & N. 467 (BIA 1967), creates a "gross miscarriage of justice" exception to the rule set forth in *Morales-Izquierdo*. The majority's position fails on at least

two grounds: first, *Farinas* is not applicable to Vega-Anguiano's case; and second, even if we were to recognize a "gross miscarriage of justice" exception to *Morales-Izquierdo*, Vega-Anguiano has not made such a showing.

As the majority recognizes, the BIA in *Farinas* held that Farinas' underlying deportation order "could not have withstood judicial attack under the law as it was then (and still is) interpreted." 12 I. & N. Dec. at 472. This is simply not true of Vega-Anguiano's removal order. The expungement of his conviction under a California rehabilitative statute does not mean that his possession offense was no longer a conviction under the immigration laws.[2] *See Nunez-Reyes v. Holder*, 646 F.3d 684, 689–90 (9th Cir. 2011). Moreover, the "fact" that Vega-Anguiano might have been *eligible* for relief under the Federal First Offender Act, had he sought such relief before his removal, does not mean that his removal was legally invalid. Rather, Vega-Anguiano remained removable based on his cocaine conviction until and unless he was granted relief under the Federal First Offender Act, or some other statute.[3] To the extent that the gross miscarriage of justice exception that the

---

[2] *Wiedersperg v. I.N.S.*, 896 F.2d 1179 (9th Cir. 1990), is similarly distinguishable. Wiedersperg's conviction was not expunged, but vacated.

[3] In *Nunez-Reyes* we overruled our prior opinion in *Lujan-Armendariz v. I.N.S.*, 222 F.3d 728 (9th Cir. 2000), and held that "that the constitutional guarantee of equal protection does not require treating, for immigration purposes, an expunged state conviction of a drug crime the same as a federal drug conviction that has been expunged under the FFOA." 646 F.3d at 690. However, we also held that we would only apply our decision prospectively to protect those who relied on *Lujan-Armendariz*. *Id*. at 693–94. It does not appear that Vega-Anguiano relied on *Lujan-Armendariz* prior to our opinion in *Nunez-Reyes*.

majority extracts from *Farinas* depends on the prior deportation or removal order not withstanding judicial attack, Vega-Anguiano has not shown that his removal order was, or is, infirm.

Even if the legal invalidity of the underlying removal order were not an essential component of a "gross miscarriage of justice," Vega-Anguiano has not made a sufficient showing of injustice to invoke our purported jurisdiction. There is no question that he was arrested for possession of cocaine in 1988 and convicted of possession in 1991. As noted, the expungement of his conviction in 1999 under a California rehabilitative statute did not undermine the basis for his removal or make his removal illegal. The fact that the government did not remove Vega-Anguiano until 2008 hardly prejudiced him. Thus, even accepting that Vega-Anguiano might have been eligible for consideration under the First Federal Offender Act after the 1999 expungement— had he requested relief—the government's failure to anticipate such a request does not make his 2008 removal a gross miscarriage of justice. Nor is there any injustice in the reinstatement of his prior removal order after he illegally reentered the United States and was convicted of a misprision of a felony.

I would affirm the BIA's denial of immigration relief because our review of Vega-Anguiano's petition to review his reinstatement order does not extend to considering the merits of his underlying removal order. Moreover, even if there were a "gross miscarriage of justice" exception that created jurisdiction, Vega-Anguiano has not shown any injustice because his prior removal was not illegal either when he was removed in 2008 or now. Accordingly, I dissent.