FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEJANDRO LOPEZ VAZQUEZ, *Petitioner*, v. MERRICK B. GARLAND, Attorney General, *Respondent.* | No. 18-70329 Agency No. A074-608-073 OPINION |

On Petition for Review of an Order of the
Department of Homeland Security

Argued and Submitted August 12, 2021
Seattle, Washington

Filed November 12, 2021

Before: Carlos T. Bea, Daniel A. Bress, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Bress

## SUMMARY[*]

### Immigration

Dismissing Alejandro Lopez Vazquez's petition for review of a 2017 Department of Homeland Security order reinstating his 1996 removal order, the panel concluded that Lopez's 1996 order had a valid basis both when it was issued and when he was removed, and therefore, he failed to establish a miscarriage of justice that would permit the court to entertain a collateral attack on the 1996 order.

Lopez collaterally attacked his 1996 order on the ground that the drug conviction underlying that order was vacated in 2014. It was undisputed that Lopez's conviction was legally valid at the time his original removal order was issued and when it was executed. The panel explained that in reviewing a reinstatement order, the court has jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to entertain a collateral attack on the underlying removal order only if the petitioner can show that he or she suffered a gross miscarriage of justice in the initial immigration hearing.

Lopez argued that he suffered a gross miscarriage of justice because the vacatur of his conviction made his removal order "void *ab initio*." The panel concluded that this argument failed under *Hernandez-Almanza v. INS*, 547 F.2d 100 (9th Cir. 1976), *superseded by statute on other grounds as stated in Planes v. Holder*, 652 F.3d 991 (9th Cir. 2011), and *Vega-Anguiano v. Barr*, 982 F.3d 542 (9th Cir.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

2019). In *Hernandez-Almanza*, the petitioner was removed based on a drug conviction and later obtained a *nunc pro tunc* order vacating that conviction. This court rejected the petitioner's argument that his exclusion order was void, holding that a valid exclusion order is not disturbed by post-conviction relief and that, therefore, the petitioner failed to meet the gross miscarriage of justice standard. In contrast, in *Vega-Anguiano*, the petitioner was ordered removed based on a valid conviction, but his conviction was expunged before the government executed the removal order. The court held that this was one of the rare cases in which a collateral attack was permitted under the gross miscarriage of justice standard.

In light of those precedents, the panel concluded that when a removal order is legally valid at the time of entry and execution, a petitioner cannot challenge a reinstatement of that order as a gross miscarriage of justice based on developments that call into question the original removal order, but which occurred after the petitioner was removed from this country. The panel also observed that this approach was consistent with that of other circuits.

Separately, the panel concluded that Lopez could not show a gross miscarriage of justice for another reason: he was independently removable at the time of his underlying proceedings for having entered the United States unlawfully. Rejecting Lopez's contention that his unlawful presence charge was insufficient to guarantee his deportation, the panel explained that Lopez's speculation on this point was insufficient to demonstrate a gross miscarriage of justice.

**COUNSEL**

David Froman (argued), Froman Law Firm, San Diego, California, for Petitioner.

Rachel L. Browning (argued), Trial Attorney; Jessica E. Burns, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

BRESS, Circuit Judge:

Following several unlawful reentries into this country, Alejandro Lopez Vazquez (Lopez) petitions for review of a Department of Homeland Security order reinstating his 1996 order of removal. Through his petition, Lopez mounts a collateral attack on his underlying order of removal on the ground that the drug conviction on which it was based has since been vacated. He claims this invalidates his reinstatement order, too.

In reviewing a reinstatement order, we have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to entertain a collateral attack on the underlying removal order only in cases of "gross miscarriage of justice." But we hold there was no gross miscarriage of justice here. Lopez's original removal order had a valid legal basis both at the time it was issued and when Lopez was later removed. Under our precedents, that is sufficient reason for concluding that Lopez may not collaterally attack his underlying removal order. We thus dismiss Lopez's petition for review.

I

Lopez, a citizen of Mexico, first entered the United States unlawfully in January 1992. In 1995, he pleaded guilty to possession of a controlled substance (cocaine) in Utah state court. In 1996, an Immigration Judge (IJ) found Lopez removable. The Board of Immigration Appeals (BIA) dismissed Lopez's appeal. Lopez was then removed from the United States in February 1998. It is undisputed that at the time Lopez's original removal order was issued and later executed, his Utah conviction was legally valid and provided a proper basis for removing Lopez from the United States.

Over the next few months, Lopez tried to reenter the United States illegally several times. It appears that Lopez was apprehended in Salt Lake City in April 1998, removed again to Mexico on May 22, 1998, and apprehended in the United States again on May 27, 1998. This time, he was convicted of illegal reentry, 8 U.S.C. § 1326(a), and served six months in prison. Thereafter, DHS reinstated his removal order, and he was removed again to Mexico on November 30, 1998. At the latest by January 1, 2001, and perhaps as early as May 2000, Lopez had again illegally reentered this country. Lopez has since remained in the United States illegally. He is now married to an American citizen and has children who are citizens.

In 2014, a Utah state court granted Lopez's motion to withdraw his guilty plea and vacate his 1995 cocaine conviction based on ineffective assistance of counsel and a jurisdictional defect. Lopez then pleaded guilty to possessing benzylfentanyl, in violation of Utah law. Because benzylfentanyl is not listed in section 102 of the Controlled Substances Act, 21 U.S.C. § 802, possessing it is not a removable offense. *See, e.g.*, *Cheuk Fung S-Yong v. Holder*, 600 F.3d 1028, 1034 (9th Cir. 2010).

In August 2017, Lopez's wife filed an immigration petition on his behalf. Lopez also filed for adjustment of status to permanent resident. In December 2017, however, immigration enforcement officers arrested Lopez and sought to reinstate his 1996 removal order.

Lopez requested asylum, but the asylum officer found Lopez did not have a reasonable fear of persecution in Mexico. An IJ affirmed that determination and the BIA denied Lopez's motion to reopen his removal proceedings sua sponte as well as Lopez's motion for reconsideration. The Tenth Circuit dismissed Lopez's petitions for review of those decisions. *See Lopez-Vazquez v. Barr*, 769 F. App'x 591, 595 (10th Cir. 2019).

In the meantime, Lopez had petitioned this Court for review of DHS's reinstatement order. He argues that the reinstatement order is invalid because the underlying order of removal on which it is based was invalidated when the Utah court vacated his conviction for cocaine possession.[1]

## II

Under 8 U.S.C. § 1231(a)(5), immigration authorities may reinstate a prior order of removal if a non-citizen reenters illegally. This "only requires proof that (1) petitioner is an alien, (2) who was subject to a prior removal order, and (3) who illegally reentered the United

---

[1] The government argues that Lopez's challenge is untimely because he did not file his petition for review within 30 days of his original 1996 removal order. *See* 8 U.S.C. § 1252(b)(1). Circuit precedent now forecloses that argument. *See Vega-Anguiano v. Barr*, 982 F.3d 542, 545 (9th Cir. 2019) (holding that a petitioner making a collateral attack on his original order of removal need only file a petition for review within 30 days of the reinstatement order).

States." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007) (en banc). Upon those findings, which we may review, *see id.* at 495–96; 8 U.S.C. § 1252(a)(1), but which are not in dispute here, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5).

Nonetheless, 8 U.S.C. § 1252(a)(2)(D) reinstates our jurisdiction to review certain constitutional claims or questions of law raised in a petition for review, including review of reinstatement orders. *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1137 (9th Cir. 2008). In the context of our review of a reinstatement order, we have interpreted § 1252(a)(2)(D) to permit a limited collateral attack on the original removal order on which the reinstatement order is premised. *See, e.g.*, *Vega-Anguiano v. Barr*, 982 F.3d 542, 544, 547 (9th Cir. 2019); *Villa-Anguiano v. Holder*, 727 F.3d 873, 875, 877 & n.3 (9th Cir. 2013); *Garcia de Rincon*, 539 F.3d at 1138.

The standard, however, is a high one: such a collateral attack is allowed only "if the petitioner can show that he has suffered a 'gross miscarriage of justice' in the initial deportation proceeding." *Vega-Anguiano*, 982 F.3d at 544 (quoting *Garcia de Rincon*, 539 F.3d at 1138). We have described the "gross miscarriage of justice" standard as imposing "strict limitations on collateral attacks on prior removal orders." *Id.* at 547. We have also said that the circumstances in which such an attack would be appropriate will be "rare" and "extremely limited." *Id.* at 547, 551.

These observations are consistent with the statutory scheme. When a non-citizen is removed from the United States and reenters without permission, the government may reasonably seek to rely on the original order of removal and the process previously afforded. 8 U.S.C. § 1231(a)(5). As

we explained in *Morales-Izquierdo*, non-citizens "have no constitutional right to force the government to re-adjudicate a final removal order by unlawfully reentering the country. Nor is the government required to expend vast resources on extraneous procedures before reinstating a removal order that has already been finalized and executed." 486 F.3d at 498.

The immigration laws provide ample means for challenging an order of removal. But once a non-citizen has exhausted these procedures and his removal is effectuated, "allowing an alien to manufacture an opportunity to contest his earlier removal by reentering the country illegally" would inspire violations of our nation's immigrations laws. *Villa-Anguiano*, 727 F.3d at 880. The gross miscarriage of justice standard recognizes that the fair and disciplined administration of our immigration system requires both a measure of finality in prior adjudications and the creation of disincentives against future law violation. *See id.*

Lopez argues that he suffered a gross miscarriage of justice because the 1995 drug conviction underlying his original removal order was vacated, making that order "void *ab initio*." This argument fails under our precedents. In particular, two of our cases—*Hernandez-Almanza v. INS*, 547 F.2d 100 (9th Cir. 1976), *superseded by statute on other grounds as stated in Planes v. Holder*, 652 F.3d 991, 995 (9th Cir. 2011), and *Vega-Anguiano v. Barr*, 982 F.3d 542 (9th Cir. 2019)—demonstrate why Lopez cannot show a gross miscarriage of justice.

In *Hernandez-Almanza*, the petitioner, a lawful permanent resident, was removed based on his drug conviction. 547 F.2d at 101–02. He then reentered the United States illegally. *Id.* at 102. The government sought to reinstate his prior removal order, but while those

proceedings were pending the petitioner obtained a *nunc pro tunc* order vacating his drug conviction. *Id.* Like Lopez, the petitioner argued that "since the state *nunc pro tunc* order vacated his guilty plea and conviction as of the date of those proceedings, his status as an excludable alien, which was based on that conviction, is also void as of its original date of entry." *Id.*

We disagreed. As relevant here, we held that "a valid exclusion order based upon a final judgment is not disturbed by a post-conviction attack upon that judgment." *Id.* at 103. The petitioner's conviction "serve[d] as a valid basis" for his removal order, and, therefore, the "post-conviction expungement order by the state court did not affect the validity of his exclusion." *Id.* We thus rejected the petitioner's argument that he could meet the gross miscarriage of justice standard, and that the later expungement of his conviction "should erase all consequences, including exclusion, which stemmed from the now-vacated conviction." *Id.* That determination controls here.

Compare *Hernandez-Almanza* with *Vega-Anguiano*. The petitioner in *Vega-Anguiano* was ordered removed based on a valid, qualifying conviction, but his conviction was expunged *before* the government executed the removal order and returned him to Mexico (some ten years after an IJ first ordered him removed). 982 F.3d at 544, 546–47. The petitioner then reentered the United States illegally, and the government sought to reinstate the petitioner's prior order of removal. *Id.* at 546–47.

We held that this was "one of the rare cases" in which a collateral attack on the underlying order of removal was permitted under the gross miscarriage of justice standard. *Id.* at 547. That was because, we explained, when "an alien has

been removed on the basis of a deportation or removal order that lacked a valid legal basis at the time of its issuance or execution, a gross miscarriage of justice occurs." *Id.* at 549.

We were careful to emphasize, however, that this was consistent with *Hernandez-Almanza*, because in that case the underlying order of removal remained valid at the time it was issued *and* later executed. *Id.* at 548–49 (discussing *Hernandez-Almanza*). We explained that "Vega-Anguiano, in contrast to Hernandez-Almanza, had his conviction expunged prior to—indeed, many years prior to—the execution of his removal order in 2008." *Id.* at 544, 549.

The distinction is a critical one. The expungement of Vega-Anguiano's conviction had eliminated "the legal basis" for his removal order "by the time" the government returned Vega-Anguiano to Mexico. *Id.* at 546, 549. There is no comparable injustice when, as here, the removal order was valid as of the time of removal and the petitioner seeks to minimize his illegal reentry through a collateral attack on his original removal order. In that instance, the rarely satisfied gross miscarriage of justice standard is not met, and the government's interests in finality, deterring illegal reentries, and promoting a stable immigration system prevail.

When a removal order is legally valid at the time of entry and execution, a petitioner cannot challenge a reinstatement of that order as a gross miscarriage of justice based on developments that call into question the original removal order, but which occurred after the petitioner was removed from this country. *Id.* at 548–49; *Hernandez-Almanza*, 547 F.2d at 103.

This approach is consistent with that of other circuits. *See, e.g.*, *Sanchez-Gonzalez v. Garland*, 4 F.4th 411, 416

(6th Cir. 2021) (declining to adopt the "gross miscarriage of justice" standard, but explaining that the standard would not apply regardless when petitioner's conviction was "in effect" "at the time" of his removal); *Gonzalez-Cantu v. Sessions*, 866 F.3d 302, 306 (5th Cir. 2017) (explaining that the "gross miscarriage of justice" standard is not met when the removal order was not "clearly unlawful" at the time of the original removal proceedings); *Debeato v. Att'y Gen. of U.S.*, 505 F.3d 231, 236 (3d Cir. 2007) ("[A] gross miscarriage of justice has been found only when 'the individual should not have been deported based on the law as it existed at the time of the original deportation.'") (emphasis omitted) (quoting *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 682 n.13 (7th Cir. 2003)).

Finally, separate and apart from the fact that Lopez's Utah drug conviction provided a valid legal basis for removal at the time his original removal order was entered and executed, *see Vega-Anguiano*, 982 F.3d at 548–49, Lopez cannot show a gross miscarriage of justice for another reason: he was independently removable for having entered the United States unlawfully.  According to the administrative record, and by his own admission, Lopez entered the country without inspection in 1992.  He was charged with that violation, which also rendered him removable under former 8 U.S.C. § 1251(a)(1)(B) (amended in 1996).  In dismissing his appeal of the removal order, the BIA, in addition to citing Lopez's Utah drug conviction, also cited Lopez's illegal entry, noting that the IJ "found the respondent deportable based on . . . 8 U.S.C. §[] 1251(a)(1)(B). . . ."

Lopez in his briefing responds that "the unlawful presence charge was insufficient, from a practical standpoint, to guarantee [his] deportation."  But Lopez's

speculation on this point is insufficient to demonstrate a gross miscarriage of justice.  Lopez cannot meet that high standard when it is apparent there was a "valid legal basis" for his removal order, both when it was issued and executed. *Vega-Anguiano*, 982 F.3d at 547.

\* \* \*

For the foregoing reasons, the petition for review is

**DISMISSED.**