**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 13 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

VICTORINO PORTILLO VILLALBA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No. 22-965

Agency No.
A039-810-538

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 9, 2024**
Pasadena, California

Before: WARDLAW, FRIEDLAND, and SUNG, Circuit Judges.

Petitioner Victorino Portillo Villalba ("Portillo"), a native and citizen of

Mexico, challenges the reinstatement of his prior removal order. "[W]e have

jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to entertain a collateral attack on the

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

underlying removal order only in cases of 'gross miscarriage of justice.'" *Lopez v. Garland*, 17 F.4th 1232, 1233 (9th Cir. 2021). Portillo contends that the entry and execution of his prior removal order was such a gross miscarriage of justice. We disagree, so we dismiss the petition.[1]

Portillo's prior removal order was entered on June 5, 1998. He challenged that order before the Board of Immigration Appeals ("BIA"), which dismissed his appeal on the ground that he was ineligible for a waiver of inadmissibility under a controlling decision by the Attorney General. Although the BIA noted that other circuits had disagreed with the Attorney General's decision, Portillo's case was not controlled by those circuits' precedents. He did not petition this court for review of the BIA's decision, and he was removed on October 22, 1999.[2]

In 2021, the Government determined that Portillo had unlawfully reentered the country and it notified him of its intent to reinstate his prior removal order.[3]

"When a removal order is legally valid at the time of entry and execution, a petitioner cannot challenge a reinstatement of that order as a gross miscarriage of

---

[1] The Government initially argued that we lack jurisdiction because Portillo's petition was not filed within thirty days of entry of a final order of removal under 8 U.S.C. § 1252(b)(1). The Government later withdrew that argument. Our court has now held that the thirty-day deadline is not jurisdictional, *Alonso-Juarez v. Garland*, 80 F.4th 1039, 1056 (9th Cir. 2023), so we need not address that argument now that the Government has withdrawn it.

[2] Portillo's unopposed motion to supplement the record is granted.

[3] The notice of reinstatement gives incorrect dates for both Portillo's original removal order and his removal. The differences are of no significance here.

justice based on developments that . . . occurred after the petitioner was removed from this country." *Lopez*, 17 F.4th at 1236.

Here, Portillo challenges the reinstatement of his removal order based on a development that occurred after he was removed from the country: this court's decision in *Magana-Pizano v. I.N.S.*, 200 F.3d 603 (9th Cir. 1999), which held that the Antiterrorism and Effective Death Penalty Act ("AEDPA") did not retroactively foreclose discretionary waivers under § 212(c) of the Immigration and Nationality Act for already-pending removal proceedings. *Id.* at 611 & n.11 (disagreeing with the Attorney General's contrary conclusion).[4] That decision occurred after the entry and execution of Portillo's removal order, so it does not provide a basis for a "gross miscarriage of justice" challenge. *See Lopez*, 17 F.4th at 1236.

In some instances, a judicial ruling might be understood to simply state what the law has always been. If *Magana-Pizano* merely articulated what the law was at the time of Portillo's original removal, it might not be the sort of "development[] that . . . occurred after the petitioner was removed from this country" that is excluded as a basis for collateral attacks under *Lopez*, 17 F.4th at 1236. But we are

---

[4] Portillo also cites the Supreme Court's decision in *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001). *St. Cyr* held that § 212(c) waivers remained available for certain noncitizens "whose convictions were obtained through plea agreements." *Id.* at 326. Portillo does not say whether the conviction underlying his removal order was the result of a plea agreement.

bound by prior precedent holding that a "new rule [was] announced in *Magana-Pizano*." *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1173 (9th Cir. 2001). We explained in *Alvarenga-Villalobos* that a removal order analogous Portillo's "was perfectly lawful under the law at the time [that petitioner] was deported," because *Magana-Pizano* had not yet been decided. *Id.*

*Alvarenga-Villalobos* is not contrary to our decision in *United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003). In that case, an immigration judge ("IJ") had advised Leon-Paz that he was ineligible for relief. *Id.* at 1004. When he was later charged with illegal reentry and challenged his original removal order, we concluded that the IJ had erred because Leon-Paz "was entitled to be considered for § 212(c) relief" in light of the Supreme Court's later decision in *St. Cyr*. *Id.* at 1007. That language could be interpreted to say that *St. Cyr* (and, by analogy, *Magana-Pizano*) merely stated what the law had always been. But we have since characterized *Leon-Paz* as a "narrow exception" to the principle that IJs "need not anticipate future change[s] in law" when advising a noncitizen of his or her "apparent eligibility for relief from removal." *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1017 (9th Cir. 2013) (alteration in original) (quotation marks omitted). In any event, we had no occasion in *Leon-Paz* to characterize *St. Cyr* one way or the other. We held that the IJ erred in advising Leon-Paz because there was a "reasonable possibility" that Leon-Paz could prevail on appeal, given that the

4                                              22-965

Attorney General's determination regarding AEDPA's retroactivity would be entitled to no deference. *Id.* at 1018 & n.6 (quotation marks omitted) (citing *Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1067 (9th Cir. 2010) (explaining lack of deference)). Whether there is a possibility that a noncitizen might be eligible for relief on direct appeal is a different question than whether a future interpretation of a law is "deemed to establish 'what the meaning of the law always was' in some theoretical way." *Id.* at 1018-19. *Leon-Paz* therefore does not contradict *Alvarenga-Villalobos*'s holding that *Magana-Pizano* represented a change in the law. Accordingly, Portillo has not shown a gross miscarriage of justice.

**DISMISSED.**[5]

---

[5] The temporary stay of removal remains in place until the mandate issues. The motion for a stay of removal is otherwise denied.