RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

EVELIO SANCHEZ-GONZALEZ,

        *Petitioner*,

    *v.*

MERRICK B. GARLAND, Attorney General,

        *Respondent*.

No. 20-3938

On Petition for Review from the Board of Immigration Appeals;
No. A 072 170 496.

Decided and Filed: July 16, 2021

Before: GILMAN, McKEAGUE, and BUSH, Circuit Judges.

───────────────

### COUNSEL

───────────────

**ON BRIEF:** Karen Denise Bradley, BRADLEY & ASSOCIATES, Dayton, Ohio, for Petitioner. Margaret A. O'Donnell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

### OPINION

───────────────

McKEAGUE, Circuit Judge. Evelio Sanchez Gonzalez[1] petitions for review from the Board of Immigration Appeals's denial of his motion to reopen his 2008 removal order. Because the Department of Homeland Security reinstated the 2008 removal order twice upon Sanchez's illegal reentries into the country, the BIA determined that it lacked jurisdiction to reopen the

───────────

[1]This opinion refers to the petitioner as Sanchez, adopting the nomenclature the petitioner used in his briefing.

order. The relevant section of the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(5), mandates that if "the prior order of removal is reinstated . . . [the order] is not subject to being reopened." We cannot, therefore, give Sanchez the relief he seeks. *See Cordova-Soto v. Holder*, 732 F.3d 789, 795 (7th Cir. 2013); *cf. Moreno-Martinez v. Barr*, 932 F.3d 461, 465 (6th Cir. 2019). The petition for review is therefore **DENIED**.

**I.**

Sanchez immigrated to the United States from Honduras in 1994 and became a lawful permanent resident when he married a U.S. citizen. In 1999, Sanchez pleaded guilty to sexual battery in the Greene County (Ohio) Court of Common Pleas. The Immigration and Naturalization Service served Sanchez with a Notice to Appear for removal proceedings because sexual battery is a crime involving moral turpitude, which merits removal under 8 U.S.C. § 1227(a)(2)(A)(i). The immigration judge ordered Sanchez removed. On appeal, the BIA noted that Sanchez implied "that he pled guilty to sexual battery perhaps in reliance on an assurance from his prior counsel that a conviction would not result in additional immigration consequences" but concluded that "the B[IA] has no authority to invalidate or look behind his criminal conviction."

Immigration authorities encountered Sanchez in the United States again in 2012 and 2018. Each time, they reinstated the original 2008 removal order and removed him.

But while reviewing Sanchez's case following his 2018 detention, his counsel realized that his original guilty plea was legally infirm. Ohio law requires that a judge advise defendants such as Sanchez that a guilty plea might result in "the consequence[] of deportation." O.R.C. § 2943.031(A). Because the state-court judge in Sanchez's case failed to give that advisement, the court vacated the sexual battery conviction. Sanchez instead entered a new plea for simple assault—which does not qualify as a crime involving moral turpitude.

Sanchez then moved the BIA to reopen his 2008 removal order because he no longer had a conviction for a crime involving moral turpitude. He also raised the argument that he would not have been removed but for the ineffective assistance of former counsels. The BIA denied the motion, determining that it lacked jurisdiction because the order of removal was reinstated after

an illegal reentry under 8 U.S.C. § 1231(a)(5).  The BIA concluded that § 1231(a)(5) "prohibits reopening of removal proceedings if those proceedings are subject to reinstatement," and cited our case law interpreting § 1231(a)(5), stating that an illegal reentrant's removal order "is reinstated from its original date and is not subject to being reopened or reviewed." *Moreno-Martinez*, 932 F.3d at 464 (quoting 8 U.S.C. § 1231(a)(5)).  Sanchez petitions for review of the BIA's denial of his motion reopen.

## II.

We review denials of motions to reopen under the abuse-of-discretion standard but review legal questions de novo.  *Dieng v. Barr*, 947 F.3d 956, 960 (6th Cir. 2020).

## III.

This petition presents three questions.  First, the government argues that we lack jurisdiction to review this petition.  Second, the government urges that 8 U.S.C. § 1231(a)(5) precludes reopening of Sanchez's removal order.  Third, Sanchez argues that a "gross miscarriage of justice" exception preserves jurisdiction and requires granting the petition in this case.  We conclude that we have jurisdiction to interpret § 1231(a)(5), that it does preclude reopening, and that it does not contain a gross-miscarriage-of-justice exception.

## A.

We have jurisdiction to interpret 8 U.S.C. § 1231(a)(5).  The BIA determined that it could not reopen Sanchez's removal proceedings because of the jurisdictional bar in § 1231(a)(5).  That determination stemmed from § 1231(a)(5)'s language that illegal reentrants' removal orders are "not subject to being reopened or reviewed."  But the BIA noted that the Courts of Appeals have a jurisdictional savings provision in 8 U.S.C. § 1252(a)(2)(D) that allows for judicial review.  Section 1252(a)(2)(D) says that notwithstanding other sections outside of § 1252 that "limit[] or eliminate[] judicial review," Courts of Appeals have jurisdiction to review "constitutional claims or questions of law raised upon a petition for review."  The BIA opined accordingly that we "may review constitutional claims related to an underlying removal order notwithstanding § 1231(a)(5)'s bar to review."

We agree with the BIA to a point but disagree with its ultimate conclusion. We agree that we have jurisdiction under § 1252(a)(2)(D) to review the legal questions involved in Sanchez's motion to reopen, namely to review the BIA's reading of § 1231(a)(5). *See Rodriguez-Saragosa v. Sessions*, 904 F.3d 349, 354 n.4 (5th Cir. 2018) (noting that § 1252(a)(2)(D) saves Courts of Appeals's jurisdiction to interpret 8 U.S.C. § 1231(a)(5)); *Cordova-Soto*, 732 F.3d at 793 (same); *see also Moreno-Martinez*, 932 F.3d at 463. "We may not, however, grant the relief that [Sanchez] seeks because we lack jurisdiction to reopen the underlying removal order." *Moreno-Martinez*, 932 F.3d at 463; *accord Rodriguez-Saragosa*, 904 F.3d at 354 n.4 ("[Petitioner] has not pointed to any similar exception that might apply to § 1231(a)(5)'s directives to the BIA.").

As Sanchez concedes, if he had directly petitioned for review of the reinstatement of his removal order, we would not have had jurisdiction to review the underlying removal order. Petitions for review of final orders of removal must be filed within 30 days of the order—that requirement is jurisdictional. 8 U.S.C. § 1252(b)(1); *see Moreno-Martinez*, 932 F.3d at 464. And when a final order is reinstated, the prior removal order is reinstated from the original date rather than from the date of reinstatement. *Moreno-Martinez*, 932 F.3d at 464–65. Because that 30-day limit is within § 1252 itself, it is unaffected by § 1252(a)(2)(D)'s savings clause. *See Ovalle-Ruiz v. Holder*, 591 F. App'x 397, 400 (6th Cir. 2014) (reading the savings clause to apply only outside of § 1252). "Thus, any challenge (collateral or otherwise) filed 30 days after the removal order was filed is untimely and we have no jurisdictional basis to entertain the challenge." *Moreno-Martinez*, 932 F.3d at 465. The government argues that this case ends there because the petition is untimely with regard to the underlying removal order.

But here, Sanchez filed a motion to reopen rather than appealing the second reinstatement of his removal order. *See Kucana v. Holder*, 558 U.S. 233, 250 (2010) (federal courts of appeals generally have jurisdiction over denials of motions to reopen). The BIA denied the motion to reopen because of 8 U.S.C. § 1231(a)(5)'s jurisdictional bar, and we have jurisdiction to review the BIA's statutory interpretation because § 1252(a)(2)(D)'s savings clause applies to § 1231(a)(5). *Cordova-Soto*, 732 F.3d at 793; *see also Rodriguez-Saragosa*, 904 F.3d at 354 n.4; *cf. Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (discussing the "strong

presumption" in favor of judicial review of administrative action (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991)).

That doesn't mean we have jurisdiction to review the 2008 removal order itself—that petition would be time-barred. *See Moreno-Martinez*, 932 F.3d at 465. A petitioner cannot use a motion to reopen as a de facto petition for review of a removal order because § 1252(a)(5) maintains that the "exclusive means for judicial review" of removal orders are petitions for review. But we can review legal questions intrinsic to the BIA's denial of Sanchez's motion to reopen. Construing Sanchez's appeal as "rais[ing] questions of law about the meaning of § 1231(a)(5)," we proceed. *Cordova-Soto*, 732 F.3d at 793.

**B.**

The BIA correctly determined that § 1231(a)(5) precludes reopening Sanchez's removal order. A petitioner generally has a right to make one motion to reopen removal proceedings (subject to several limitations). *See* 8 U.S.C. § 1229a(c)(7). But "[i]f . . . an alien has reentered the United States illegally after having been removed . . . , the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). Sanchez illegally reentered the United States after removal twice, so Sanchez's removal order cannot be reopened. *See Martinez v. Larose*, 968 F.3d 555, 563 (6th Cir. 2020) ("He cannot challenge the prior removal order by seeking to have it reopened or reviewed."); *Rodriguez-Saragosa*, 904 F.3d at 351.

This plain reading reflects congressional intent to take a "harder line" with illegal reentrants, denying them "any benefits from [their] latest violation of U.S. law." *Cuenca v. Barr*, 956 F.3d 1079, 1085–86 (9th Cir. 2020) (cleaned up). Under 8 U.S.C. § 1231(a)(5), "an alien *forfeits* th[e] right [to move to reopen] by reentering the country illegally." *Rodriguez-Saragosa*, 904 F.3d at 354. Congress did not include an exception for constitutional or legal challenges to the underlying order of removal. *See Cuenca*, 956 F.3d at 1084 ("We read th[e] language [of § 1231(a)(5)] to unambiguously bar reopening a reinstated prior removal order."); *Cordova-Soto*, 732 F.3d at 795 ("[W]e are confident that [§ 1231(a)(5)] prohibits collateral review after the review of the reinstatement is complete . . . .").

In sum, we can't "grant Petitioner's proposed remedy—i.e., to reopen the underlying removal order." *Moreno-Martinez*, 932 F.3d at 465. This conclusion gives effect to "Congress['s] cho[ice] to give fewer legal rights to aliens removed previously than to those who face removal for the first time." *Martinez v. Larose*, 980 F.3d 551, 554–54 (6th Cir. 2020) (mem.) (Thapar, J., concurring in the denial of rehearing en banc). Section 1231(a)(5) means what is says: Sanchez's removal order "is not subject to being reopened."

## C.

Sanchez argues that 8 U.S.C. § 1231(a)(5)'s bar against reopening for illegal reentrants should not apply because his original removal proceedings were a "gross miscarriage of justice." His proposed exception finds no support in the text of § 1231(a)(5) or our case law and wouldn't apply in Sanchez's case regardless. We decline to read the exception into § 1231(a)(5).

Other Courts of Appeals and the BIA—but not the Sixth Circuit—have applied the gross-miscarriage-of-justice exception in the context of reinstatement proceedings[2] to allow petitioners to hurdle § 1252(b)(1)'s and § 1231(a)(5)'s jurisdictional bars. *See, e.g.*, *Vega-Anguiano v. Barr*, 982 F.3d 542, 547 (9th Cir. 2019); *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 514 (5th Cir. 2006). Those circuits "retain jurisdiction to review an underlying removal order if the petitioner can show that he has suffered a gross miscarriage of justice in the initial deportation proceeding." *Vega-Anguiano*, 982 F.3d at 547 (cleaned up); *accord Martinez v. Johnson*, 740 F.3d 1040, 1042 (5th Cir. 2014). Sanchez urges us to adopt the exception and apply it to his case.

There are a number of problems with his argument. First, the gross-miscarriage-of-justice exception is contrary to the text of 8 U.S.C. § 1231(a)(5). As detailed above, the statute mandates that a prior removal order of an illegal reentrant "is not subject to being reopened or reviewed." This language, added in 2006, *see Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34 (2006) (describing the legislative history of the statute), does not leave room for an implied exception first developed by the BIA decades ago. *See, e.g.*, *Matter of Farinas*, 12 I. & N. Dec. 467, 472 (BIA 1967). Section 1252(b)(1)'s directive that "[t]he petition for review must be filed

---

[2]Sanchez provides no caselaw in which a court applied the gross-miscarriage-of-justice exception when reviewing a motion to reopen rather than in reviewing a reinstatement proceeding.

not later than 30 days after the date of the final order of removal" likewise contains no room for exceptions.

Second, there is no support for such an exception within our Circuit. Although we have entertained a due-process challenge to an underlying immigration proceeding during a reinstatement-proceeding review, we did so without considering the jurisdictional question. *Villegas de la Paz v. Holder*, 640 F.3d 650, 655–57 (6th Cir. 2010). We have since held that we lack jurisdiction to entertain such challenges because of § 1252(b)(1)'s 30-day time bar. *Moreno-Martinez*, 932 F.3d at 465 n.2. To allow the exception for a motion to reopen would circumvent this jurisdictional bar and render *Moreno-Martinez* null.

Third, Sanchez doesn't meet the standard even if we were to adopt it. "[A] gross miscarriage of justice occurs when a deportation or removal order had no valid legal basis at the time of its issuance *or* at the time of its execution." *Vega-Anguiano*, 982 F.3d at 547; *see Matter of Farinas*, 12 I. & N. Dec. 467, 472 (BIA 1967) (asking whether the removal order "could . . . have withstood judicial attack" at the time of removal); *see also Debeato v. Att'y Gen. of U.S.*, 505 F.3d 231, 237 (3d Cir. 2007); *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 682 n.13 (7th Cir. 2003). Here, at the time of Sanchez's removal his conviction was in effect, so his removal was valid. *See In re: Tunbosun Olawale William*, 2008 WL 5537807, at *4 (BIA Dec. 23, 2008) (declining to apply the exception because "the respondent's . . . conviction . . . was in full effect for immigration purposes and constituted a valid factual predicate for his removal" even though it was later found constitutionally infirm); *see also In Re: Daniel Espino-Medina A.K.A. Daniel Espino*, 2016 WL 1722509, at *2 (BIA Apr. 5, 2016); *Matter of Roman*, 19 I. & N. Dec. 855, 857 (BIA 1988) ("At the time of her deportation in 1982, an order specifically rescinding her lawful permanent resident status was not necessary."). We review the decisions of the BIA, not the decisions of the state courts—here, the BIA made no legal or constitutional errors.[3] *See Aguilera-Enriquez v. INS*, 516 F.2d 565, 570–71 (6th Cir. 1975) ("If one is successful in

---

[3]Petitioner cites *Hernandez-Almanza v. INS* for the proposition that the Ninth Circuit might extend the gross-miscarriage-of-justice analysis to prior criminal proceedings. 547 F.2d 100, 102–03 (9th Cir. 1976). In that case, the Ninth Circuit did note that the petitioner was competently represented in his criminal proceedings so there was no miscarriage of justice in the immigration proceedings, but the Ninth Circuit then proceeded to say that "a valid exclusion order based upon a final [criminal] judgment is not disturbed by a post conviction attack upon that judgment." *Id.* at 103.

reversing the judgment and sentence, no conviction will remain to form a basis for deportation. But until a conviction is overturned, it is an adequate basis for a deportation order." (footnote omitted)).**4**

Nothing in the text of § 1231(a)(5) indicates that Congress contemplated exceptions for exceptional circumstances.  We decline to read a gross-miscarriage-of-justice exception into the statutory framework.

## IV.

Sanchez's original removal order "is not subject to being reopened" because he illegally reentered the country.  8 U.S.C. § 1231(a)(5).  The BIA correctly denied his motion to reopen. *See Cordova-Soto*, 732 F.3d at 796.  The petition is therefore **DENIED**.

---

**4**Petitioner alludes to but does not squarely present a Suspension Clause argument via quotation of our earlier statements regarding § 1231(a)(5)'s and § 1252(b)(1)'s relationship with the Clause.  We've previously said that if, "due to ineffective assistance of counsel . . . [an] alien [i]s prevented from challenging [the] underlying [removal] order and now is barred from reopening his removal proceedings (as a means to challenge that underlying order)," that the statutory framework may raise constitutional issues. *Juarez-Chavez v. Holder*, 515 F. App'x 463, 467 (6th Cir. 2013); *cf. Mohamed v. Barr*, 797 F. App'x 1019, 1025 (6th Cir. 2020).  Although we do not reach the question, we note that the Supreme Court recently concluded that the "writ [of habeas corpus] simply provide[s] a means of contesting the lawfulness of restraint and securing release" (at least as it existed in 1789), so in the context of immigration proceedings the Suspension Clause is not implicated when a petitioner seeks "the right to enter or remain in a country or to obtain administrative review potentially leading to that result." *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1969 (2020).