**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 2, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

EDGAR TARANGO-DELGADO, a/k/a
Armondo De Santiago,

     Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

     Respondent.

Nos. 19-9615 & 20-9619

_____

**Petition for Review from an Order of the**
**Board of Immigration Appeals**
_____

Stephen Petrany of Jones Day, Washington D.C. (Brittney Lane Kubisch of Jones Day, Los Angeles, California; Ryan Proctor of Jones Day, Washington D.C.; Nicole C. Henning of Jones Day, Chicago, Illinois; Charles Roth of National Immigrant Justice Center, Chicago, Illinois, on the briefs) for Petitioner-Appellant.

Jeffery R. Leist, Senior Litigation Counsel, Office of Immigration Litigation (Brian Boynton, Acting Assistant Attorney, General Civil Division; Anthony C. Payne, Assistant Director, Office of Immigration Litigation, Department of Justice with him on the brief), Washington D.C., for Respondent-Appellee.

_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

Petitioner Edgar Tarango-Delgado appeals the Board of Immigration Appeals' ("BIA") denial of his two motions to reopen his removal proceedings. Because 8 U.S.C. § 1231(a)(5) bars Tarango-Delgado from such relief, we affirm.

## BACKGROUND

### I.    Factual Background

Tarango-Delgado, a citizen of Mexico, came to the United States in 1977, when he was seven months old. He became a lawful permanent resident at age ten. And for almost four decades, he lived in this country with his parents, siblings, wife, and children—all of whom are now U.S. citizens.

In 2015, state police arrested Tarango-Delgado and charged him with aggravated animal cruelty, a felony. He pleaded guilty to that charge. But, before entering his plea, his counsel failed to advise him that pleading guilty would have deportation consequences under 8 U.S.C. § 1227(a)(2)(A)(ii). Those consequences arose because aggravated animal cruelty is a crime of moral turpitude.[1] A few months after he pleaded guilty, the government commenced removal proceedings against him.

### II.    Procedural Background

To challenge his removal, Tarango-Delgado took two actions. First, he moved for post-conviction relief in Colorado state court, arguing that his counsel had

---

[1] In 1997, Tarango-Delgado was convicted of second-degree burglary in Colorado state court. This burglary conviction counted as his first qualifying crime of moral turpitude.

provided ineffective assistance under the Sixth Amendment by not advising him of the immigration consequences of a guilty plea and conviction. FAR at 216–25 (relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010)). Second, he applied for cancellation of removal under 8 U.S.C. § 1229b(a) before an immigration judge ("IJ").[2]

In October 2017, with the ineffective-assistance-of-counsel motion still pending, an IJ denied Tarango-Delgado's motion for cancellation of removal. Tarango-Delgado didn't appeal the IJ's decision, and he was removed to Mexico in November 2017.

Almost a year after his removal, a Colorado state court ruled on Tarango-Delgado's ineffective-assistance-of-counsel motion. Unsurprisingly, that court concluded that Tarango-Delgado had not "knowingly and voluntarily" pleaded guilty to the aggravated-animal-cruelty charge, because his attorney had not advised him of the immigration consequences of a guilty plea. So it vacated his conviction and reinstated the original aggravated-animal-cruelty charge.

A.     *First Motion to Reopen*

In January 2019, with his aggravated-animal-cruelty conviction vacated and the charge reinstated, Tarango-Delgado filed his first motion to reopen his immigration proceedings before an IJ. He argued that his deadline to move to reopen

---

[2] Section 1229b(a) is a form of discretionary relief that allows an IJ to cancel a removal order if an applicant can satisfy certain statutory requirements. *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1019–20 (10th Cir. 2007).

3

had been equitably tolled while his Colorado ineffective-assistance-of-counsel motion was pending. Tarango-Delgado also argued for the IJ to sua sponte reopen his case under 8 C.F.R. § 1003.23(b), contending that the vacatur of his animal-cruelty conviction should qualify as an exceptional circumstance.

The IJ denied Tarango-Delgado's motion to reopen. It ruled that Tarango-Delgado was not entitled to equitable tolling, because he had not exercised diligence in moving to reopen his case. The IJ also declined to reopen the case sua sponte because, despite the state court's vacating the conviction, it reinstated the original animal-cruelty charge, enabling the state to recommence its prosecution.

Tarango-Delgado appealed the IJ's decision, but the BIA dismissed. He challenges the BIA's decision.

B.    *Tarango-Delgado's Unlawful Reentry*

In late February or early March 2019, a few days after the IJ denied Tarango-Delgado's first motion to reopen, he reentered this country without authorization.[3] And a few weeks later, after the Department of Homeland Security ("DHS") learned about the illegal reentry, it reinstated Tarango-Delgado's prior removal order.

---

[3] According to the IJ's factual summary, Tarango-Delgado illegally reentered the country on February 29, 2019. But as Tarango-Delgado points out, that date must be wrong because 2019 was not a leap year. So Tarango-Delgado most likely reentered the country on February 28 or March 1—about three days after the IJ denied his first motion to reopen.

4

About two weeks after DHS reinstated his removal order, Tarango-Delgado applied for withholding of removal under the Convention Against Torture ("CAT").[4] An asylum officer found that Tarango-Delgado credibly feared returning to Mexico and referred his petition to an IJ. But the IJ denied his petition for CAT relief.[5] The BIA affirmed. Tarango-Delgado does not challenge the BIA's decision.

C.    *Second Motion to Reopen*

In December 2019, Tarango-Delgado pleaded guilty to a misdemeanor animal-cruelty charge, which by definition would no longer qualify as a crime of moral turpitude. Having eliminated his second qualifying conviction for a crime of moral turpitude (the earlier burglary conviction being his first), Tarango-Delgado filed a second motion to reopen his immigration proceedings.

But the government also raised a new argument: that 8 U.S.C. § 1231(a)(5) barred consideration of Tarango-Delgado's motion because he had illegally reentered

---

[4] The CAT allows a petitioner to obtain withholding of removal if he can show "that it is more likely than not that he or she would be tortured if removed" to a particular country. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004); *see also* 8 C.F.R. § 208.16(c). Though Tarango-Delgado applied for relief under only the CAT, the IJ also considered whether he would be eligible for relief under 8 U.S.C. § 1231(b)(3). That statute would prohibit Tarango-Delgado's removal on a showing that his "life or freedom would be threatened" because of his "race, religion, nationality, membership in a particular social group, or political opinion" if he were removed to Mexico. 8 U.S.C. § 1231(b)(3).

[5] Ultimately, the IJ denied the petition because Tarango-Delgado had failed to show (1) that he would be tortured if removed to Mexico or (2) that he qualified as a member of a "particular social group" to be eligible for relief under § 1231(b)(3).

the United States after being removed. The BIA sided with the government. Tarango-Delgado appeals the BIA's affirmance as well.

## DISCUSSION

Tarango-Delgado appeals the BIA's denial of his two motions to reopen.[6] Because we conclude that 8 U.S.C. § 1231(a)(5) bars the reopening of his removal proceedings, we affirm the BIA's denials.

## I.    Jurisdiction

We first resolve whether we have jurisdiction over Tarango-Delgado's appeal. Under 8 U.S.C. § 1252(b)(1), we have jurisdiction to review removal orders only if the petition for review is filed within "30 days after the date of the final order of removal." Since Tarango-Delgado's final order of removal was filed in October 2017, our authority to review the removal order itself expired in November 2017.

But Tarango-Delgado does not challenge the removal order, or even its reinstatement. Rather, he appeals the BIA's denial of his two motions to reopen. And since he appealed those decisions within thirty days of their denial, he cleared § 1252(b)(1)'s procedural hurdle. *See Bhattarai v. Holder*, 408 F. App'x 212, 215 (10th Cir. 2011).

Next, we turn to 8 U.S.C. § 1252(a)(2)(D)—the "savings clause." *Sanchez-Gonzalez v. Garland*, 4 F.4th 411, 414 (6th Cir. 2021). That statute states that "[no]

---

[6] As to his first motion, Tarango-Delgado argues that the BIA erred in concluding that his ineffective-assistance-of-counsel motion had not equitably tolled his statutory deadline to reopen his immigration proceedings while it was pending in Colorado state court. We do not reach this issue because we affirm on other grounds.

other provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). "Section 1231 is in the same chapter as § 1252." *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513 (5th Cir. 2006). Thus, § 1252(a)(2)(D) applies to § 1231(a)(5). *See id.* Said another way, we have jurisdiction over Tarango-Delgado's motions to reopen so long as they raise "constitutional claims or questions of law." *See Sanchez-Gonzalez*, 4 F.4th at 413.

The BIA denied Tarango-Delgado's second motion to reopen after concluding that § 1231(a)(5) barred review or reopening of the removal order. Whether the BIA correctly interpreted the statute is a question of law, so we have jurisdiction to review that question. *Id.* at 413–14.

## II.    Standard of Review

We review de novo constitutional and legal questions. *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007). But we defer to DHS's reasonable interpretations of the statutes it administers. *See Reyes-Vargas v. Barr*, 958 F.3d 1295, 1300–02 (10th Cir. 2020).

## III.    Section 1231(a)(5) Forecloses Tarango-Delgado's Motions to Reopen

As with all questions of statutory interpretation, we begin with the text:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

7

8 U.S.C. § 1231(a)(5).

Based on the statute's text, once Tarango-Delgado illegally reentered the country, the BIA lacked authority to reopen Tarango-Delgado's removal order. Several circuits agree with this interpretation. *See Sanchez-Gonzalez*, 4 F.4th at 415 (6th Circuit); *Gutierrez-Gutierrez v. Garland*, 991 F.3d 990, 994 (8th Cir. 2021); *Cuenca v. Barr*, 956 F.3d 1079, 1084 (9th Cir. 2020); *Rodriguez-Saragosa v. Sessions*, 904 F.3d 349, 354 (5th Cir. 2018); *Cordova-Soto v. Holder*, 732 F.3d 789, 794 (7th Cir. 2013).

Our reading also reflects Congress's decision to "toe[] a harder line" with illegal reentrants. *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34 (2006). Before 1996, "only a limited class of illegal reentrants" were subject to reinstatement of their prior removal order. *Id.* And even then, many still "could seek some varieties of discretionary relief." *Id.* But in 1996, Congress amended the statute so that reinstatement applied "to all illegal reentrants, 'expanded the types of orders that can be reinstated and limited the relief available to aliens whose orders are reinstated.'" *Cuenca*, 956 F.3d at 1084 (quoting *Padilla v. Ashcroft*, 334 F.3d 921, 924 (9th Cir. 2003)). Congress thus sought to deny illegal reentrants "any benefits from [their] latest violation of U.S. law." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 498 (9th Cir. 2007).

In short, § 1231(a)(5) means what it says. And because Tarango-Delgado "reentered the United States illegally after having been removed," his prior removal order was reinstated "from its original date" and "is not subject to being reopened."

8

8 U.S.C. § 1231(a)(5). Thus, § 1231(a)(5) unambiguously forecloses both of Tarango-Delgado's motions to reopen.

## IV.    There Is No Gross-Miscarriage-of-Justice Exception in § 1231(a)(5)

Still, Tarango-Delgado argues that § 1231(a)(5) does not apply because his original removal proceedings resulted from a "gross miscarriage of justice." But given the statute's clear directive, we cannot read this exception into § 1231(a)(5).

Some courts have adopted such an exception for illegal reentrants—albeit in slightly different contexts. The Ninth Circuit, for example, permits review of an underlying order "if the petitioner can show that he has suffered a 'gross miscarriage of justice' in the initial deportation proceeding." *Vega-Anguiano v. Barr*, 982 F.3d 542, 547 (9th Cir. 2019). The Third and Fifth Circuits allow collateral attacks on underlying removal petitions if a petitioner can establish a "gross miscarriage of justice." *See Debeato v. Att'y Gen. of U.S.*, 505 F.3d 231, 235 (3d Cir. 2007) (requiring a "gross miscarriage of justice" as "a prerequisite to relief"); *Ramirez-Molina*, 436 F.3d at 514 (requiring a "gross miscarriage of justice" as a jurisdictional requirement for a collateral attack on a removal order).

But at least one other circuit has rejected this exception.[7] In *Sanchez-Gonzalez*—a case much like ours—the Sixth Circuit held that a "gross-miscarriage-of-justice exception is contrary to the text of 8 U.S.C. § 1231(a)(5)." 4 F.4th at 415.

---

[7] The Eighth Circuit also rejected a gross-miscarriage-of-justice exception within § 1231(a)(5). *Gutierrez-Gutierrez*, 991 F.3d at 994.

We agree with the Sixth Circuit. Though it may be tempting to create a judicial exception, § 1231(a)'s language leaves no room for one. *See Recovery Res. Corp. v. United States*, 930 F.2d 804, 805 (10th Cir. 1991) ("When the terms of a statute are unambiguous, we do not create exceptions or modifications.").

And even if a gross-miscarriage-of-justice exception existed, Tarango-Delgado would not qualify for it. Using the Ninth Circuit's articulation, a gross miscarriage of justice occurs "when a deportation or removal order had no valid legal basis at the time of its issuance *or* at the time of its execution." *Vega-Anguiano*, 982 F.3d at 547. When the removal order was issued and executed, Tarango-Delgado's removal was valid because he was twice convicted for crimes of moral turpitude. That one of those convictions was later overturned does not change our analysis. As we have explained, the "pendency of post-conviction motions . . . does not vitiate finality for removal purposes, *unless and until the convictions are overturned.*" *Waugh v. Holder*, 642 F.3d 1279, 1284 (10th Cir. 2011) (emphasis added) (quoting *Paredes v. Att'y Gen. of U.S.*, 528 F.3d 196, 198–99 (3d Cir. 2008)). Thus, because Tarango-Delgado's aggravated-animal-cruelty conviction was not overturned until after his removal, his removal—at the time—was valid. *See Sanchez-Gonzalez*, 4 F.4th at 416 (collecting cases that explain why post-conviction relief does not invalidate the original removal proceedings).

Tarango-Delgado's attempt to analogize his case to the fundamental-miscarriage-of-justice exception in federal habeas proceedings is also unavailing. In that context, the gross-miscarriage-of-justice exception permits a prisoner to

overcome procedural bars to habeas relief on a "credible showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). Tarango-Delgado argues that the gross-miscarriage-of-justice exception for § 1231(a)(5) should likewise allow him to overcome the statute's reopening bar if he can prove he is "actually innocent" of the "removability charged raised against him under the law in effect at the time of his removal." Opening Br. at 40.

This argument has three problems. First, Tarango-Delgado cites no authority adopting his version of the gross-miscarriage-of-justice exception. Second, even if this version applied, his constitutionally infirm plea notwithstanding, Tarango-Delgado has not shown that he was "actually innocent" of his conviction. Finally, as we explained above, "the law in effect at the time of his removal" permitted Tarango-Delgado's removal because his post-conviction motion had not yet been granted.[8]

In sum, § 1231(a)(5)'s text precludes any attempt to engraft a gross-miscarriage-of-justice exception. So § 1231(a)(5) forecloses Tarango-Delgado's motions to reopen.

---

[8] Our reading of § 1231(a)(5) aligns with other relevant doctrines, like the fugitive-disentitlement doctrine. "That doctrine allows courts to dismiss criminal appeals to prevent fugitives from enjoying the benefits of an appeal while flouting the judgments that keep them in custody." *Cordova-Soto*, 732 F.3d at 795. Thus, because Tarango-Delgado broke our laws by illegally reentering the country, he has lost the right to reopen his case. And while Tarango-Delgado rightfully points out that the fugitive-disentitlement doctrine is discretionary, "[t]he language of § 1231(a)(5) barring relief here is a mandatory directive in a statute." *Id.*

## V.    Section 1231(a)(5) Has Not Been Unconstitutionally Applied

Next, Tarango-Delgado argues that § 1231(a)(5) unconstitutionally deprives him of his right to reopen. We disagree.

Section 1231(a)(5) would not have prevented Tarango-Delgado from moving to reopen if he had filed that motion without reentering illegally. *See Rodriguez-Saragosa*, 904 F.3d at 354–55. But once he reentered, he forfeited that right. *See id.* at 354. If Tarango-Delgado had legitimate cause to challenge his removal, he had the chance to pursue that claim while he was outside the country, "just like every other alien in his position." *Morales-Izquierdo*, 486 F.3d at 498.

This interpretation does not force Tarango-Delgado to choose between risking his life and proving that he was not removable, as he argues. Assuming he reasonably feared persecution, he could have *legally* presented himself at the border and sought asylum. Instead, he chose not to avail himself of those procedures until *after* he had already illegally reentered. He now faces the consequence of that choice—the loss of his right to reopen his removal proceedings.

## VI.    Tarango-Delgado Is Not Entitled to Nunc Pro Tunc Relief

Finally, Tarango-Delgado maintains that nunc pro tunc relief permits avoidance of § 1231's reopening bar.[9] As Tarango-Delgado sees it, we can grant him

---

[9] Nunc pro tunc means, "now for then." *Zhang v. Holder*, 617 F.3d 650, 665 n.13 (2d Cir. 2010).

relief from the date of the IJ's "wrongful" denial of his first motion to reopen. And

because that denial preceded his illegal reentry, § 1231(a)(5) would not apply.

Nunc pro tunc is an equitable remedy that courts have applied in immigration

proceedings. *Zhang*, 617 F.3d at 665. But as an equitable remedy, unclean hands can

bar such relief. *Edwards v. I.N.S.*, 393 F.3d 299, 311 n.15 (2d Cir. 2004). So even

assuming this doctrine would allow us to reach back to the IJ's decision, Tarango-

Delgado would not be entitled to relief because his illegal reentry disqualified him

for equitable relief.

Thus, the doctrine of nunc pro tunc cannot save Tarango-Delgado's appeal.

## CONCLUSION

We affirm the denial of Tarango-Delgado's motions to reopen under

§ 1231(a)(5).[10]

---

[10] We accept Tarango-Delgado's amended motions for *in forma pauperis* status and grant the motions.