NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0063n.06

No. 21-3070

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANTONIO CANO-MORALES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| MERRICK B. GARLAND, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |

**FILED**
Feb 02, 2022
DEBORAH S. HUNT, Clerk

BEFORE: CLAY, DONALD, and NALBANDIAN, Circuit Judges.

**CLAY, Circuit Judge**. Petitioner Antonio Cano-Morales petitions this Court for review of the Board of Immigration Appeals' denial of his motion to reopen his cancellation of removal proceedings. The only issue in the case is whether the evidence he proffered in support of reopening his removal proceeding—that his daughters would not receive the same education and that one of his daughters would not be able to adequately treat her pre-diabetes—is sufficient to create a reasonable likelihood of proving that his removal would cause his daughters exceptional or extremely unusual hardship. We **DENY** Cano's petition for review for the reasons set forth below.

## I.    BACKGROUND

Antonio Cano-Morales ("Cano") is a native and citizen of Mexico who entered the United States without admission in 1994. During the approximately 20 years Cano has lived in the United

States, he fathered two daughters, purchased a home, and was gainfully employed as a nurseryman. Cano's domestic partner, Diana Salazar, is also a native and citizen of Mexico.

In 2014, Cano was convicted of misdemeanor domestic assault and sentenced to approximately 12 months' imprisonment. Shortly after his release, Cano was arrested during a traffic stop, and the Department of Homeland Security began removal proceedings. With the aid of counsel, Cano conceded removability but sought cancellation of removal because doing so would cause exceptional and extremely unusual hardship on his two daughters, M.C. and C.C. Specifically, he argued that he would not be able to make enough money to support himself in Mexico while still supporting Salazar, M.C., and C.C., who planned to remain in the United States. Salazar also testified in support of Cano, stating that she struggled to pay the family's bills while he was detained pending removal.

An Immigration Judge ("IJ") denied Cano's motion for cancellation of removal. To be eligible for cancellation of removal, Cano had to prove that he "(1) had been continuously present in the United States during the ten-year period preceding the application; (2) has been a person of good moral character during that time; (3) has not been convicted of certain qualifying convictions, and (4) his removal would result in 'exceptional and extremely unusual hardship'" to his daughters. *Galindo-Munoz v. Barr*, 799 F. App'x 905, 910 (6th Cir. 2020) (citing 8 U.S.C. § 1229b(b)(1)). The IJ concluded that Cano had satisfied each element except proving his removal would cause exceptional and extremely unusual hardship.[1] Cano appealed the denial of his cancellation of

---

[1] The IJ determined Cano's domestic violence conviction was excusable under the petty offense exception, and therefore, was not a crime involving moral turpitude. Considering this in conjunction with testimony that he supported his family and made an effort to reform his behavior, the IJ concluded Cano was a person of good moral character. Additionally, because Cano's domestic violence conviction was a misdemeanor, the IJ was not statutorily prohibited from cancelling his removal.

removal to the Board of Immigration Appeals (the "Board"), which affirmed the IJ on June 17, 2020.

On August 14, 2020, Cano filed with the Board a motion to reopen his cancellation of removal proceedings. *See* 8 C.F.R. § 1003.2(a) (2021) (motions to reopen are filed directly with the Board). Cano shared that Salazar, M.C., and C.C. no longer intended to remain in the United States, and instead, would relocate to Mexico with him. He argued new evidence of his daughters' recently-diagnosed health issues and their struggles in school had become available since the Board affirmed the IJ's denial, and this new evidence proved his removal would cause exceptional and extremely unusual hardship.[2] Despite this new evidence, the Board denied his motion to reopen. Cano timely filed a petition for review with this Court.

## II. ANALYSIS

Courts of appeal may review the Board's orders denying motions to reopen. *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 315–16 (6th Cir. 2018); 8 U.S.C. § 1252(a)(1); 28 U.S.C. § 2347(a). However, we "'lack jurisdiction to review the denial of a motion to reopen or remand in a cancellation of removal case, unless the motion raised a new hardship ground not decided in the original decision.'" *Id.* at 316 (quoting *Ortiz-Cervantes v. Holder*, 596 F. App'x 429, 432 (6th Cir. 2015)). We review "denials of motions to reopen under the abuse-of-discretion standard but review legal questions de novo." *Sanchez-Gonzalez v. Garland*, 4 F.4th 411, 413 (6th Cir. 2021); *see also Kucana v. Holder*, 558 U.S. 233, 242 (2010). The Board abuses its discretion when the denial "'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or

---

[2] Cano argued before the Board that C.C. had recently been diagnosed with a thyroid problem. In his briefs submitted to this Court, he forfeits such argument and only argues M.C.'s diagnosis of pre-diabetes creates a reasonable likelihood of successfully proving hardship.

group.'" *Dieng v. Barr*, 947 F.3d 956, 960–61 (6th Cir. 2020) (quoting *Alizoti v. Gonzales*, 477 F.3d 448, 453 (6th Cir. 2007)).

The petitioner need not conclusively prove his removal would create a qualifying hardship; however, the new evidence must create a reasonable likelihood of success if the proceedings were to be reopened. *Hernandez-Perez*, 911 F.3d at 320–21. Because Cano's cancellation of removal claim was denied solely for failing to establish that his removal would create an exceptional or extremely unusual hardship for his daughters, his petition to reopen must set forth new facts that create a reasonable likelihood of establishing such hardship.

To successfully prove exceptional or extremely unusual hardship, "'the alien must provide evidence of harm to his spouse, parent, or child substantially beyond that which ordinarily would be expected to result from the alien's deportation.'" *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (BIA 2001) (quoting H.R. Conf. Rep. No. 104-828) (emphasis omitted). The new evidence that Cano proffers in support of reopening his removal proceedings are that his daughters will be deprived of educational support services they currently receive and that M.C.'s recent diagnosis of pre-diabetes cannot be adequately treated or managed in Mexico. The Board reviewed Cano's new evidence and found neither of these additional facts, alone or considered together, was sufficient to create a reasonable likelihood of establishing exceptional or extremely unusual hardship on his daughters.

a. M.C.'s and C.C.'s Education Needs

The crux of Cano's first argument is that Mexican schools do not provide adequate educational support services, and therefore his daughters will be deprived of receiving an adequate education. To support this argument, Cano relies on an excerpted article, which states that in the

2010–11 school year, less than 15% of Mexican schools received help from special education support teams.

Unquestionably, Cano's daughters struggle academically. M.C. and C.C. are both significantly behind in school. When M.C. was in seventh grade, she was performing at a third-grade level. In fact, testing showed that M.C. was performing at approximately the fifth percentile. Due to her poor performance, M.C. received specialized support services for up to 55 minutes, three to five times per week. Despite this intervention, M.C.'s school records describe her as alternating between making "Adequate Progress" and "Not Adequate Progress." M.C.'s mother, Salazar, submitted a declaration in support of Cano's petition stating that M.C. was not progressing and that she hoped M.C. would be placed in a full special education program. Cano's other daughter performed poorly too. When C.C. was in third grade, she was performing at a second-grade level. C.C. was testing at approximately the fifteenth percentile. Like her older sister, C.C. received specialized support services for up to 45 minutes, four times per week. C.C.'s school records do not indicate any of the support services yielded "Adequate Progress."

The issue in this case, however, is not whether the girls struggle academically; they undeniably do. Instead, the question is whether the special intervention they receive is so beneficial that depriving the girls of such intervention would result in exceptional or extremely unusual hardship. It is not. In fact, Cano has failed to prove the intervention services M.C. and C.C. are receiving provide any benefit. The record repeatedly shows that despite the significant intervention M.C. and C.C. receive, they are not making adequate progress. Without any evidence that the services his daughters receive are beneficial, Cano has failed to prove the deprivation of such intervention will cause exception or extremely unusual hardship.

We need not address whether Mexican schools offer special education services because the deprivation of such services does not result in hardship. However, even if we were to assume that the educational support M.C. and C.C. receive is beneficial and that they would not have access to the same level of instruction in Mexico, Cano's argument still fails. This Court has held that "diminished educational options alone do not establish the required hardship." *Singh v. Rosen*, 984 F.3d 1142, 1154–55 (6th Cir. 2021). To meet the threshold of exceptional or extremely unusual hardship, the petitioner must prove "that his 'children would be deprived of all schooling or of an opportunity to obtain any education.'" *Id.* at 1155 (quoting *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (B.I.A. 2002)). Cano has not satisfied this high standard.

Relatedly, Cano claims the Board erred by failing to credit Salazar's testimony that M.C. was not making adequate progress. In determining whether the new evidence about hardship merits reopening, the Board must "'accept as true reasonably specific facts proffered by an alien in support of a motion to reopen unless it finds those facts to be inherently unbelievable.'" *Hernandez-Perez*, 911 F.3d at 317 (quoting *Trujillo Diaz v. Sessions*, 880 F.3d 244, 252 (6th Cir. 2018)). Contrary to Cano's claim, however, the Board did credit Salazar's testimony. After addressing the school reports, the Board noted, "[M.C.'s] mother says that the child is not making progress and that the family hopes she will be able to receive full special education services." (Order Den. Mot. to Reopen, A.R. # 4.) Salazar's testimony does not change the outcome. She simply testified M.C. was not making adequate progress in school. In other words, she testified that the interventional services M.C. receives are not working. Her testimony supports the Board's conclusion that the deprivation of these interventional services would not cause hardship because Cano has not proven they currently provide any benefit.

b. <u>M.C.'s Diagnosis of Pre-Diabetes</u>

Cano's second argument in favor of reopening his removal proceedings is that Mexico does not provide adequate resources for M.C. to manage her pre-diabetes. In support of this argument, Cano relies on an academic article purportedly finding diabetes treatment in Mexico is significantly less accessible than in the United States. The same article, however, states that "[t]he poor management of hyperglycemia is not due to lack of access to health services. The majority of patients are under treatment (94.1%) . . . ." (Simon Barquera et al., *Diabetes in Mexico: Cost & Management of Diabetes and its Complications and Challenges for Health Policy*, GLOBALIZATION & HEALTH (2013), A.R. # 96.) Here, the record does not establish by even a preponderance of the evidence that M.C. will not be able to access treatment. M.C. may have a more difficult time accessing future treatment, but Cano has not identified any obstacle to treatment that rises to the level of causing M.C. an exceptional or extremely unusual hardship. Additionally, Cano has not articulated any services or treatments that M.C. currently requires that will not be available in Mexico. His argument is based entirely on the assumption that M.C.'s health will worsen in the future to the point she will require medical treatment for diabetes.

Finally, Cano argues the Board erred by failing to consider the new evidence he proffered collectively. When reviewing a petition for reopening, "all hardship factors should be considered in the aggregate." *Monreal*, 23 I. & N. Dec. at 64. Specifically, consideration is given "to the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives." *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 468 (BIA 2002). Here, the Board did consider all Cano's evidence together. After rejecting each of his arguments separately, the Board stated, "We have reviewed the school reports for the respondent's children and have considered them along with the

medical reports, statements from the respondent and his partner, and the other documents submitted with the motion." (Order Den. Mot. to Reopen, A.R. # 5.)  Even in the aggregate, the Board determined Cano's case was not among the "truly exceptional" and "very uncommon" situations that warrant finding a hardship. *Monreal*, 23 I. & N. Dec. at 59, 62.  We agree.

### III.    CONCLUSION

For the foregoing reasons, we conclude Cano has not introduced new evidence that his removal would create an exceptional or extremely unusual hardship for his daughters. Accordingly, we **DENY** his petition for review.